UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-392-GWU

SHEILA M. SHUPE,                                                                                              PLAINTIFF,

VS.                                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                              DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

08-392  Sheila M. Shupe

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.       At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.       If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-392  Sheila M. Shupe

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-392  Sheila M. Shupe

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

08-392 Sheila M. Shupe

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-392 Sheila M. Shupe

## DISCUSSION

The plaintiff, Sheila M. Shupe, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of "degenerative disc disease and history of poly-substance abuse, poly-pharmacy, in remission." (Tr. 20). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 51-year-old woman with a high school education and work experience as a collections clerk, could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional limitations. (Tr. 423). She: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, bend, crouch, or climb ramps or stairs; (3) would need to alternate sitting or standing every 30 minutes; and (4) could carry out no more than simple to detailed instructions and no production rate work in a job involving no public contact and no more than casual interactions with supervisors or coworkers. (Tr. 422-4). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 424).

08-392 Sheila M. Shupe

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Apart from a history of substance issues in remission, the ALJ did not find that the plaintiff had a "severe" mental impairment, a conclusion challenged by the plaintiff on appeal.

The plaintiff had alleged "nerves" as one of her disabling conditions. (Tr. 76). She was seen briefly at the Cumberland River Comprehensive Care Center (CCC) in October and November, 2005 with complaints of depression and nervousness, and was given a diagnosis of an adjustment disorder with depressed mood by the staff psychiatrist, Dr. Syed Raza. (Tr. 198-9). Dr. Raza assigned a current Global Assessment of Functioning (GAF) score of 58, representing moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. An impression of anxiety and depression was listed by a treating source, Dr. Richard Stoltzfus, on the plaintiff's initial visit in November, 2005. (Tr. 281). He also noted hand tremors at that time and prescribed medications for nerves. (Tr. 280-1). The plaintiff reported that she stopped taking all such medications by the end of the year. (Tr. 276).

Dr. Jeanne Bennett, a psychologist, conducted a consultative evaluation of the plaintiff on January 28, 2006. (Tr. 228). She stated that she had stopped taking the psychotropic medications that had been prescribed for her because they were not helping. (Id.). She admitted to a previous heavy use of alcohol and a remote

8

08-392 Sheila M. Shupe

DUI but stated that she had stopped using alcohol and marijuana. (Id.). She described limited daily activities and poor sleep due to pain but was able to shop, attend church, and handle household finances. (Tr. 228-9). Dr. Bennett found her attention and concentration to be intact, although she had trouble with recalling some items, and estimated her general intellectual functioning as being average. (Tr. 229). Dr. Bennett diagnosed a pain disorder with psychological features secondary to a general medical condition, with a GAF of 50 (Tr. 231). In terms of specific functional restrictions, the psychologist felt that the plaintiff would have a "marked" limitation in her ability to tolerate the stress and pressure of day-to-day employment, a "moderate" limitation in her ability to maintain attention and concentration, and a "slight" limitation in her capacity to respond appropriately to supervision and coworkers in a work setting. (Id.).

Less than a month later, the plaintiff voluntarily admitted herself to the psychiatric unit of the Harlan Appalachian Regional Hospital because of psychotic symptoms, which were described as visual and auditory hallucinations and anxiety and depression. She admitted to buying the medication Xanax from friends and relatives, and a urine drug screen was positive for benzodiazepines. (Tr. 238-9). There was also alcohol in her bloodstream. (Id.). She improved with treatment and discharged on March 4, 2006 with diagnoses of a mood disorder due to chemical dependence, a substance-induced mood disorder, benzodiazepine abuse, and a psychotic disorder not otherwise specified. Her GAF was given as 80. (Tr. 233).

08-392 Sheila M. Shupe

She was advised not to use any illegal drugs and to follow up with mental health treatment. (Tr. 235). No functional restrictions are given.

The plaintiff sought treatment from Dr. Tihomir Tochev beginning approximately two days after her discharge. (Tr. 260). Although the physician's office notes are difficult to read, they reflect complaints of anxiety and depression as well as physical problems. Examination findings include a notation of a tremor and anxiousness. (Tr. 266). Dr. Tochev apparently had some prior records to review, not including the ARH admission, and was aware that the plaintiff had been prescribed with psychotropic medications, which she claimed were ineffective. (Id.). He diagnosed anxiety and a panic disorder among other problems, and prescribed Xanax. (Id.). One month later, after another office visit, Dr. Tochev completed a medical report which, in discussing the plaintiff's mental problems, contained his conclusion that his patient was oriented and had "no mental condition preventing her from social interactions" but in a "work environment she may not be able to perform because of anxiety." (Tr. 260).

As the plaintiff points out on appeal, the ALJ did not even mention this opinion by Dr. Tochev in his decision. The Sixth Circuit has held that an ALJ is required by the Commissioner's regulations to provide "good reasons" pursuant to 20 C.F.R. § 404.1527(d)(2) for declining to accept the opinion of a treating source, even if it is otherwise supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). While there are some

08-392 Sheila M. Shupe

circumstances in which a failure to follow the regulation may be considered harmless error, such as when the ALJ's decision as a whole indirectly attacks the treating source's opinion, the Sixth Circuit has expressed caution about doing so in a similar case where none of the medical opinions supported the residual functional capacity that the ALJ ultimately adopted. See Bowen v. Commissioner of Social Security, 478 F.3d 742, 747-8 (6th Cir. 2007) (citations omitted). The ALJ generally found that restrictions proffered by Dr. Tochev regarding the plaintiff's physical problems were not supported by objective medical evidence, but gave no indication that he was aware the physician had given mental restrictions. (Tr. 25-6). Dr. Tochev's opinion was not available for review to state agency sources, either. The Commissioner implies that the plaintiff's nerve problems were due to substance abuse, an improper basis for disability under Public Law 104-121. However, the ALJ did not find that the plaintiff would not be disabled, but that drug addiction or alcoholism was a contributing factor material to the determining of disability; rather, he found that the plaintiff did not even have "severe" depression and anxiety. The opinion of the treating source regarding her ability to function in a work environment would be very relevant to such a determination. Accordingly, the court cannot say that it was harmless error for the ALJ not to provide a good reason for discounting it.

State agency psychologist Edward Stodola reviewed the evidence as of February 16, 2006, prior to the plaintiff's psychiatric hospitalization. He opined that

11

08-392  Sheila M. Shupe

Dr. Bennett's opinion was not supported and it likely incorporated the plaintiff's physical problems.  (Tr. 300).  However, he felt that the plaintiff would be "moderately limited" in her ability to maintain attention and concentration for extended periods, complete a normal work day and work week without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting.  (Tr. 298-9).  He felt that she would able to understand, remember, and carry out detailed instructions for two-hour segments over an eight-hour work day, five days a week, could relate adequately in object-focused settings, and adapt to the changes and pressures of a routine setting.  (Tr. 300).  Another state agency psychologist, H. Thompson Prout, reviewed the evidence in May, 2006 after receiving evidence of the inpatient psychiatric admission but stated that this incident appeared to be related to substance abuse and did not appear to represent a decompensation.  (Tr. 335).  Although he stated that Dr. Stodola's previous functional capacity assessment was affirmed, he added an additional moderate limitation in the plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (Tr. 319-20).[1]

---

[1] The ALJ also did not mention the specific restrictions noted by Dr. Bennett, although he did explain that her GAF of 50 was not supported by her minimal findings and the subsequent GAF of 80 after the plaintiff's discharge from the hospital one month later.  (Tr. 21).

12

Although the case is being remanded on other grounds, the findings of the state agency sources that there would be limitations on the plaintiff's ability to complete a work week, perform at a consistent pace, perform activities within a schedule, and maintain attendance and punctuality is not mirrored in the ALJ's hypothetical question.  The hypothetical question limits the plaintiff only to not performing "production rate work."  Accordingly, this is an area that should be addressed on remand.

Regarding physical limitations, the plaintiff's primary argument is that the opinions of Dr. Tochev and another treating source, Dr. Stoltzfus, were not given proper weight.  Dr. Stoltzfus wrote an undated letter stating that the plaintiff was "disabled and unable to engage in competitive employment due to degenerative disc disease of the spine, chronic back pain, and anxiety and depression."  (Tr. 268).  Dr. Tochev also opined that the plaintiff was permanently disabled (Tr. 263), unable to engage in productive employment (Tr. 260), and completed a physical functional capacity assessment limiting her to less than full-time sitting and standing with no postural activities and restrictions on working around moving machinery, temperature extremes, humidity, and vibration.  (Tr. 349-50).  An ALJ is not bound by a conclusory opinion of disability, even from a treating source.  The ALJ found that the specific restrictions of Dr. Tochev were not supported by objective medical evidence.  (Tr. 26).  The plaintiff suggests that it was the ALJ's duty to recontact the treating source if he felt that his opinion was not adequately supported, citing 20

08-392 Sheila M. Shupe

C.F.R § 404.1512(e). There is no duty to recontact, however, unless the evidence is "inadequate or incomplete." The Sixth Circuit has held in an unpublished case that additional clarification is required from a medical source when his report contains a conflict or ambiguity that must be resolved. <u>Littlepage v. Chater</u>, 134 F.3d 371 (6th Cir. 1998). In the present case, the report does not contain a conflict or ambiguity just because it contained limitations that were not supported by the very vague and limited findings in the physician's office notes (see, e.g., Tr. 261-2, 265, 346). There is no evidence that Dr. Tochev had any additional information that was not included in his office notes. Accordingly, the court finds that the record before the ALJ was not inadequate or incomplete.

     The decision will be remanded for further consideration.

     This the 22nd day of September, 2009.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**